UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ANTHONY DIPIPPA,** | : | **CIVIL ACTION NO.** |
| | : | |
| Plaintiff, | : | |
| | : | 3:20-cv-01434 (   ) |
| v. | : | |
| | : | |
| **EDIBLE BRANDS, LLC,** | : | |
| | : | |
| Defendant. | : | September 23, 2020 |
| | : | |

## COMPLAINT

1. Anthony DiPippa was the Chief Financial Officer and then Chief Operating Officer of Edible Arrangements from July 2015 until his termination in September 2017.

2. At no point during his employment did Mr. DiPippa take any action that constituted "cause" for termination, as that term was defined in his employment contract.

3. Nonetheless, Edible Arrangements purported to terminate Mr. DiPippa for "cause," thus denying him the severance benefit to which he was contractually entitled.

4. Mr. DiPippa therefore sues for breach of contract.

**I.    PARTIES**

5. The plaintiff, Anthony DiPippa, is a citizen of Connecticut.

6. The defendant, Edible Brands, LLC, is a limited liability company registered in Delaware and located in Georgia.

7. Edible Brands, LLC is the parent company of Edible Arrangements, a franchising business that specializes in fresh fruit arrangements.

8. Upon information and belief, the members of Edible Brands, LLC are Tariq Farid, the Co-Founder and Chief Executive Officer of Edible Arrangements, who is a citizen of

Georgia; and his brother, Kamran Farid, another Co-Founder of Edible Arrangements, who is a citizen of Florida.

## II.   JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the plaintiff is a citizen of Connecticut, the defendant is one or more States other than Connecticut, and the matter in controversy exceeds $75,000.

10. Venue is proper within this District, pursuant to 28 U.S.C. § 1391(b), because the events or omissions giving rise to the claim occurred in this District.

## III.   FACTUAL ALLEGATIONS

### A.   Mr. DiPippa and Edible Arrangements Enter into an Employment Agreement.

11. In June 2015, Mr. DiPippa and Edible Brands, LLC signed an employment agreement. The agreement referred to Mr. DiPippa as "Executive" and Edible Brands, LLC as the "Company."

12. Paragraph 9 of the agreement concerned "Termination."

13. Paragraph 9(e) of the agreement provided that:

Upon the termination of Executive's employment hereunder for any reason, . . . (the date of such termination of employment, the "Termination Date"), Executive shall be entitled to, and the Company shall pay Executive, . . . (ii) compensation for any accrued but unused paid vacation days . . . .

14. Paragraph 9(f) of the agreement provided that:

[I]n the event that (i) the Company terminates Executive's employment with the Company without Cause, . . . the Executive shall be entitled to continuation of payment of the monthly portion of the Base Salary as in effect immediately prior to the date of termination of employment (less all applicable withholdings) for a period of six (6) months commencing on the payroll period next following the 30th day after the Termination Date (the "Severance Compensation"). The

      Severance Compensation shall be payable by the Company to Executive in accordance with the Company's regular payroll policies.

15.    "Cause" for purposes of termination was defined in Paragraph 9(b). It meant:

    i.    the breach of any material provision of this Agreement by Executive;

    ii.    Executive's engagement in a continuing pattern of negligence or any act of gross negligence or material misconduct in the performance, or non-performance, of his duties hereunder;

    iii.    Executive's commission of fraud, embezzlement or theft, or a crime constituting moral turpitude, in any case, whether or not involving the Company, that in the good faith judgment of the CEO, renders or could in the future render Executive's continued employment harmful to the Company;

    iv.    any breach by Executive of the provisions of Sections 10 through 14 [of the agreement] or of any other confidentiality, non-competition or non-solicitation covenants to the Company or any Affiliates; or

    v.    the commission of any violation of any state or federal law relating to the workplace environment (including, without limitation, laws relating to sexual harassment or age, sex or other prohibited discrimination) by Executive.

**B.    Mr. DiPippa Fulfills His Obligations Under the Agreement; Edible Arrangements Breaches Its Obligations.**

16.    Mr. DiPippa was hired in 2015 to serve as Edible Brands' Chief Financial Officer with a starting annual base salary of $350,000.

17.    In 2016, Mr. DiPippa received a raise to $370,000, and in 2017, he received a raise to $400,000. Both raises were approved by the manager of Edible Brands, Tariq Farid.

18.    In the spring of 2017, Mr. DiPippa led an effort to repurchase the interest of an outside investor in Edible Brands. Upon closing, Mr. Farid emailed the company's management to announce the transaction, lauding "Tony and team" for doing "a great job on completing this

long and cumbersome process." He added: "Thank you for all your hard work on this Tony, you are brilliant."

19. In or around July 2017, Mr. Farid promoted Mr. DiPippa from Chief Financial Officer to Chief Operating Officer.

20. Mr. DiPippa's replacement as CFO was Amanda Allen, who had joined the company in 2015 as the Vice President of Financial Planning & Analysis.

21. On September 13, 2017, Mr. Farid summoned Mr. DiPippa to his office. Mr. Farid said, in substance, that Ms. Allen had been asked to leave the company and that she was expected to work on an orderly transition plan. Mr. Farid added that he knew Mr. DiPippa was also interested in leaving the company but that Mr. Farid would not "make it easy." Mr. Farid said he needed Mr. DiPippa to stay and "fix some of the issues at the company," adding that Mr. Farid would "take care of [him]" if he did.

22. The next day, September 14, shortly after Mr. DiPippa arrived at work, Mr. Farid and the company's Chief Human Resources Officer Ed Welsh came into Mr. DiPippa's office. They said Ms. Allen had asked to meet with Mr. Welsh and had requested to be immediately terminated and given a severance; that Mr. Farid had asked to see Ms. Allen in his office, but she refused, saying she did not feel comfortable meeting with him; and that Ms. Allen had complained that Mr. Farid created a "hostile" workplace for women. Mr. Farid blamed Mr. DiPippa for Ms. Allen's complaint and the resulting need to conduct an internal investigation. Mr. Farid said, in substance, that Mr. DiPippa had created the problem by promoting Ms. Allen and that Mr. DiPippa therefore had to "leave the building" immediately.

23. Immediately after the meeting in his office, Mr. Farid met with the entire Accounting and Finance team to search for information about Mr. DiPippa and Ms. Allen that he might use to justify his decisions. He accused them of several instances of misconduct, none of which were accurate.

24. The next day, September 15, Mr. DiPippa received an email from Mr. Farid stating Mr. DiPippa had been terminated "for cause."

25. Shortly thereafter, Ms. Allen hired a lawyer to represent her concerning her termination. When Mr. Farid learned that Ms. Allen had hired a lawyer, he drafted a Superior Court complaint alleging breaches of a number of common law employment duties, such as the duty of loyalty, and had it served on her. Mr. Farid used the complaint as a bargaining tactic, and the dispute with Ms. Allen was settled before the complaint was filed with the court.

26. Mr. DiPippa did not make any demand of the company concerning his termination, and as a result, Mr. Farid did not file a lawsuit against him.

27. Mr. Farid is a notoriously impatient, unreasonable, and vindictive boss who seems incapable of retaining his company's leadership. In the past six years, Mr. Farid has terminated or forced the resignations of his company's Chief Executive Officer, two Presidents, President of International, Chief Operating Officer, Chief Financial Officer, two Chief Marketing Officers, three Chief Information Officers, three Vice Presidents of Supply Chain, Vice President of Marketing, Vice President of Business Development, two Vice Presidents of Innovation, two Heads of eCommerce, two Chief Human Resources Officers, and two General Counsels.

28. As he did with Ms. Allen, Mr. Farid's practice after he terminates one of his company's senior executives is to concoct an after-the-fact "cause" for the termination; to refuse

to pay that executive's contractually guaranteed severance on the basis of that contrived "cause"; and then to use the threat of litigation based on that contrived "cause" – as well as asserted claims by the company for the executive's purported breach of common law employment duties, such as the duty of loyalty – as leverage to negotiate reduced severance payments.

29. Edible Brands has not paid Mr. DiPippa his severance compensation (valued at $200,000) or his unused paid vacation days (valued at approximately $15,384).

30. Mr. DiPippa was willing to sign a release of claims as to Edible Brands in order to obtain his severance compensation; however, Edible Brands did not offer him a release for his review and execution.

### IV.   LEGAL CLAIMS

**COUNT ONE:**
**BREACH OF CONTRACT – SEVERANCE COMPENSATION**

31. The plaintiff incorporates by reference all preceding allegations in this Complaint.

32. The plaintiff and the defendant entered into a contract.

33. The defendant breached the contract by failing to pay the plaintiff his guaranteed severance compensation.

34. As a result of the defendant's breach, the plaintiff has suffered economic damages.

**COUNT TWO:**
**BREACH OF CONTRACT – UNUSED VACATION**

35. The plaintiff incorporates by reference all preceding allegations in this Complaint.

36. The plaintiff and the defendant entered into a contract.

37. The defendant breached the contract by failing to compensate the plaintiff for his unused paid vacation.

38. As a result of the defendant's breach, the plaintiff has suffered economic damages.

\* \* \*

WHEREFORE, the plaintiff requests that this Court assume jurisdiction over this Complaint and award him:

    a. Economic damages;

    b. Interest, pursuant to § 37-3a of the Connecticut General Statutes; and

    c. Such further relief as may be just and equitable.

                                            **RESPECTFULLY SUBMITTED,**
                                            **THE PLAINTIFF**

By:   */s/ Joshua R. Goodbaum*
        Joshua R. Goodbaum (*ct28834*)
        Stephen J. Fitzgerald (*ct22939*)
        Elisabeth J. Lee (*ct30652*)
        GARRISON, LEVIN-EPSTEIN,
            FITZGERALD & PIRROTTI, P.C.
        405 Orange Street
        New Haven, CT 06511
        Tel.: (203) 777-4425 / Fax: (203) 776-3965
        jgoodbaum@garrisonlaw.com
        sfitzgerald@garrisonlaw.com
        elee@garrisonlaw.com

        COUNSEL FOR THE PLAINTIFF

**Please enter our appearances on behalf of the Plaintiff.**