```
-----------------------------x
                             :
ANTHONY DiPIPPA              :    Civ. No. 3:20CV01434(MPS)
                             :
v.                           :
                             :
EDIBLE BRANDS, LLC           :    June 1, 2021
                             :
-----------------------------x
```

### RULING ON PLAINTIFF'S MOTION TO COMPEL [Doc. #41]

This matter was referred to the undersigned to resolve a discovery dispute between the parties. See Docs. #34, #35. Plaintiff Anthony DiPippa ("plaintiff" or "DiPippa") has filed a Motion to Compel responses to certain discovery requests. See Doc. #41. Defendant Edible Brands, LLC ("defendant" or "Edible") filed an objection on May 3, 2021, see Doc. #49, and plaintiff filed a reply on May 6, 2021. See Doc. #54. For the reasons set forth herein, plaintiff's Motion to Compel [**Doc. #41**] is **GRANTED, in part, and DENIED, in part.**

## I.  Background

Plaintiff brings this action against his former employer, Edible, alleging breach of contract and breach of the implied covenant of good faith and fair dealing, in relation to the termination of his employment by Edible in September, 2017. See generally Amended Complaint, Doc. #29. Edible "is the parent company of Edible Arrangements, a franchising business that

specializes in fresh fruit arrangements." Id. at 1. The co-
founder and Chief Executive Officer ("CEO") of Edible is Tariq
Farid ("Farid"). See id.

Plaintiff was hired by Edible in 2015 as its Chief
Financial Officer ("CFO"). See id. at 2-3. The parties signed an
employment agreement, which provided, inter alia, that if
plaintiff was terminated "without Cause," he would be entitled
to severance compensation. Id. The parties appear to agree that,
under the agreement, plaintiff would not be entitled to
severance compensation if he was terminated "with cause." See
Doc. #41 at 1-2; Doc. #49 at 1. The employment agreement defined
"cause" to include the "[e]xecutive's engagement in a continuing
pattern of negligence or any act of gross negligence or material
misconduct in the performance, or non-performance, of his
duties[.]" Doc. #29 at 3. The employment agreement also stated
that if plaintiff was terminated "for any reason," he would be
"entitled to ... compensation for any accrued but unused paid
vacation days[.]" Id. at 2.

Plaintiff alleges that he "fulfill[ed] his obligations
under" the employment agreement. Id. at 3. Specifically, he
contends that he "led an effort to repurchase the interest of an
outside investor in Edible[,]" id., for which he received praise
from Farid. See id. at 3-4. He also asserts that he received
raises in 2016 and 2017, and was promoted to the role of Chief

Operating Officer in July, 2017. See id. Plaintiff's replacement as CFO was Amanda Allen ("Allen"). See id.

On September 13, 2017, Farid told plaintiff that Allen "had been asked to leave the company[.]" Id. at 4. The next day, plaintiff was told Allen "had complained that Mr. Farid created a 'hostile' workplace for women[]" and "had requested to be immediately terminated and given a severance[.]" Id. Plaintiff contends that Farid blamed him for Allen's complaint and asked him to "leave the building[.]" Id. On September 15, 2017, plaintiff received an email from Farid stating, in its entirety: "Your employment is terminated for cause effective Friday, September 17, 2017. You will receive your final pay by direct deposit on Monday, September 18, 2017." Doc. #41-3.

Plaintiff alleges that his and Allen's terminations fit within a larger pattern of Farid terminating executives "for cause" in order to deny them severance compensation. See Doc. #29 at 5-6. Plaintiff asserts:

> Farid's practice after he terminates one of his company's senior executives is to concoct an after-the-fact 'cause' for the termination; to refuse to pay that executive's contractually guaranteed severance on the basis of that contrived 'cause'; and then to use the threat of litigation based on that contrived 'cause' – as well as asserted claims by the company for the executive's purported breach of common law employment duties, such as the duty of loyalty – as leverage to negotiate reduced severance payments.

Id. Plaintiff contends that after Farid learned Allen had hired a lawyer to represent her in connection with her termination, Farid drafted and served upon Allen a state court complaint alleging she had breached "a number of common law employment duties[.]" Id. at 5. Plaintiff states that "Farid used the complaint as a bargaining tactic, and the dispute with Ms. Allen was settled[.]" Id. Plaintiff claims that because he "did not make any demand of the company concerning his termination, ... Farid did not file a lawsuit against him." Id.

Plaintiff asserts that Edible has not paid him severance or compensated him for his unused vacation days. See id. at 6. Plaintiff brings three claims against Edible: (1) breach of contract, for failure to pay him severance compensation, (2) breach of contract, for failure to compensate him for his unused vacation days, and (3) breach of the implied covenant of good faith and fair dealing. See id. at 6-7.

Plaintiff served defendant with the disputed discovery requests on November 13, 2020. See Doc. #41 at 6. Defendant timely objected, see Doc. #41-6 at 2, and counsel for the parties met and conferred on numerous occasions, but could not resolve the dispute. See Doc. #41 at 6-7. On April 12, 2021, the parties notified Judge Shea of the dispute and sent letters to his chambers summarizing their respective positions. See Doc. #34. Judge Shea thereafter referred the matter to the

4

undersigned, see Doc. #35, and on April 16, 2021, the Court held

a telephonic discovery conference with counsel for both parties.

See Doc. #39. The parties requested leave to brief the dispute,

which the Court granted.

## II. **Applicable Law**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets

forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he burden of demonstrating

relevance remains on the party seeking discovery." Bagley v.

Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016) (citation

omitted), as amended (June 15, 2016); Republic of Turkey v.

Christie's, Inc., 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (same).

Once the party seeking discovery has demonstrated relevance, the

burden then shifts to "[t]he party resisting discovery ... [to]

show[] why discovery should be denied." Cole v. Towers Perrin

Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

"Rule 26(b)(1) is liberally construed and is necessarily

broad in scope." Parimal v. Manitex Int'l, Inc., No.

3:19CV01910(MPS)(SALM), 2021 WL 1978347, at *3 (D. Conn. May 18, 2021) (citation and quotation marks omitted). "To fall within the scope of permissible discovery, information must be relevant to any party's claim or defense. In order to be relevant for Civil Rule 26 discovery purposes, information and evidentiary material must be relevant as defined in Rule of Evidence 401." Durant v. Target Stores, Inc., No. 3:15CV01183(JBA), 2017 WL 4163661, at *3 (D. Conn. Sept. 20, 2017) (citation and quotation marks omitted). "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed R. Evid. 401.

"The broad standard of relevance, however, is not a license for unrestricted discovery." Gucci Am., Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011). Under Rule 26, as amended in 2015, a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); see also Pearlstein v. BlackBerry Ltd., 332 F.R.D. 117, 120 (S.D.N.Y. 2019), on reconsideration in part, No. 13CV07060(CM)(KHP), 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019). "Proportionality focuses on the marginal utility of the discovery sought." In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 180 F. Supp. 3d 273, 280 n.43 (S.D.N.Y.

2016) (citation and quotation marks omitted). "Proportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 49 (E.D.N.Y. 2018) (citation and quotation marks omitted).

**III. Discussion**

Plaintiff seeks to compel responses to one interrogatory and seven requests for production. See Doc. #41 at 8; see also Doc. #41-6. Generally, these requests seek information related to other executives who have been terminated or forced to resign from Edible by Farid. See Doc. #41 at 8-12. Plaintiff contends that this information is relevant for two reasons: (1) to clarify the meaning of "cause," "gross negligence," and "material misconduct" in plaintiff's employment agreement, in order to assess the legitimacy of defendant's purported reason for terminating plaintiff "for cause," see id. at 9-10, and (2) to show that Farid acted with "sinister intent[]" regarding plaintiff's termination, in order to prove plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Id. at 10-12.

Defendant objects to the requested discovery on numerous grounds, summarized by defendant as follows:

1. There is no claim of termination by DiPippa based upon status, retaliation or any state or federally protected/employment standard that might require comparison data;

2. Other employees have circumstances which are "factually unique and legally distinguishable" to the Plaintiff's claims.

3. Information sought was protected by Connecticut General Statute §31-128a. ...

4. Plaintiff sought termination information from "any other executive-level role" across multiple Edible related entities.

5. The breadth of information sought of electronically stored information of unlimited executives across companies would be unreasonably burdensome and excessive and, there was no limitation of materials that may well contain "privileged material, work product, impressions of counsel, etc."

Doc. #49 at 2.

**A. The Relevance of the Discovery Sought, Generally**

Given that Rule 26 is "obviously broad" and to be "liberally construed[,]" the Court finds that, in general, information related to the terminations of other executives by Farid is relevant to the claims asserted, for the reasons set forth by plaintiff. Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991).

First, the circumstances surrounding the terminations of other executives may clarify the interpretation of the terms "cause," "gross negligence[,]" and "material misconduct" in plaintiff's employment agreement. Doc. #29 at 2-3. As set forth

above, plaintiff's employment agreement provided that he was entitled to severance compensation only if he was terminated "without Cause." Id. at 2. The agreement defines cause as, inter alia, the "[e]xecutive's engagement in a continuing pattern of negligence or any act of gross negligence or material misconduct[.]" Id. at 3. Plaintiff was terminated "for cause" on September 15, 2021, and has not been paid severance. See id. at 5-6. The email notifying plaintiff of his termination did not provide any explanation of the "cause" for termination. See Doc. #41-3. However, defendant now asserts that plaintiff was terminated primarily due to his role in the so-called "Candle Incident," see Doc. #31 at 1-2, in which, in July, 2017, Edible inadvertently placed an order for ten times the number of birthday candles it intended to purchase. See Doc. #41 at 5. Plaintiff, as CFO, approved a payment of approximately $162,000 to the candle supplier, as a deposit for the order. See id.; see also Doc. #49 at 5. The parties disagree on certain details surrounding the Candle Incident. Compare Doc. #41 at 5-6, with Doc. #49 at 4-6. However, it appears undisputed that defendant has identified plaintiff's role in the Candle Incident as the primary reason for his termination "for cause." See Doc. #31 at 2; Doc. #41 at 5.

Plaintiff argues, therefore, that the information sought is relevant to showing that his actions in connection with the

Candle Incident did not constitute "cause" under his employment agreement. The Court agrees.

In Bertrand v. Yale Univ., No. 3:15CV01128(WWE)(JGM), 2016 WL 2743489, (D. Conn. May 11, 2016), Judge Joan G. Margolis was confronted with an analogous situation. Bertrand involved a tennis coach who was terminated "for cause," allegedly because she violated certain policies set by the University and the NCAA. See id. at *1. Plaintiff brought suit for breach of contract and breach of the implied covenant of good faith and fair dealing, contending that the reasons given for her termination "were in fact a pretextual attempt to manufacture cause when none exists, in order to relieve defendant of its obligations under the [Employment] Agreement." Id. (citation and quotation marks omitted). Plaintiff moved to compel production of documents related to violations of the same policies by other coaches, and the University's treatment of those violations, arguing that the documents were relevant because they would "assist in determining whether defendant's alleged reasons for terminating plaintiff constitute 'cause' under the Employment Agreement." Id. at *2 (citation and quotation marks omitted). Judge Margolis granted plaintiff's motion to compel, finding that "the requested information is relevant to determining whether plaintiff was terminated for cause under the Agreement." Id. at *3. The Court reasoned that because "[p]laintiff's

employment agreement defines a termination for cause as involving ... [a] 'material violation[,]'" of certain rules but does not "define what behavior will be considered a 'material violation' ... information regarding similar violations committed by" other coaches and the University's "response to these violations[] is relevant to determine if plaintiff's behavior rose to the level of a 'material violation.'" Id.; see also Trilegiant Corp. v. Sitel Corp., 272 F.R.D. 360, 364 (S.D.N.Y. 2010) (finding that "anything that might further the interpretation" of a disputed contractual provision "including information on other contracts, [Statements of Work], and manuals utilized by Trilegiant in other transactions — is relevant and subject to discovery[]").

The same reasoning applies here. Specifically, the circumstances surrounding and reasons given for the terminations of other executives by Edible may clarify the meaning of the terms "cause," "gross negligence[,]" and "material misconduct" in plaintiff's employment agreement. Doc. #29 at 2-3. The meaning of those terms is relevant to whether the reasons given for plaintiff's termination, and particularly, his involvement in the Candle Incident, constituted "gross negligence" or "material misconduct," such that Edible was justified in terminating plaintiff with cause.

<u>Second</u>, the Court finds that information related to the terminations of other executives is relevant to plaintiff's claim for breach of the implied covenant of good faith and fair dealing. To prevail on this claim, plaintiff must show, <u>inter alia</u>, "that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." <u>Bagley v. Yale Univ.</u>, 42 F. Supp. 3d 332, 360 (D. Conn. 2014) (citation and quotation marks omitted). "Bad faith implies ... a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation prompted by some interested or sinister motive." <u>McNeil v. Yale Univ.</u>, 436 F. Supp. 3d 489, 530 (D. Conn. 2020) (citation and quotation marks omitted).

Plaintiff contends that Farid has a "pattern of indiscriminately terminating executives, stiffing them on their severances based on a purported 'cause' for their terminations, and then using that purported 'cause' to negotiate reduced severance payments." Doc. #41 at 8. Plaintiff argues that evidence of this pattern – and, specifically, evidence of Farid "invent[ing] 'cause' when there was none in order to deny executives their contractually guaranteed severances[]" – is relevant to proving Farid acted with "sinister intent" in terminating plaintiff for cause. <u>Id.</u> at 12. Plaintiff asserts

that Federal Rule of Evidence 404(b) "permit[s] this so called 'other act' evidence in order to prove both 'motive [and] intent.'" Id. at 11; see also Fed. R. Evid. 404(b)(1)-(2) ("Evidence of any other ... act ... may be admissible for ... proving motive, opportunity, [and] intent[.]").

The Court agrees. The crux of plaintiff's breach of the implied covenant claim is that Farid acted in bad faith by terminating plaintiff for cause, therefore denying him severance compensation, even though plaintiff's behavior did not rise to the level of "cause." Plaintiff argues that Farid never intended to honor plaintiff's employment contract and pay him severance, because he does not "believe in severance[,]" Doc. #41-1 at 3, and, indeed, rarely pays it. This purported malintent underlies the bad faith element of plaintiff's implied covenant claim. Plaintiff contends he can show Farid's intent by

> introducing evidence of Mr. Farid's identifiable modus operandi with respect to the separation of his executive officers: his termination of those officers without 'cause'; his refusal to pay their contractually guaranteed severances; his post hoc fabrications of 'cause'; and his frivolous assertion of counterclaims as a negotiating tactic.

Doc. #41 at 11. The disputed discovery requests seek information that will inform the question whether this "modus operandi" actually existed. Id.

Because the requested information is relevant, defendant "bears the burden of showing why discovery should be denied."

Cole, 256 F.R.D. at 80. The Court is unpersuaded by defendant's
objections to the discovery sought. First, defendant appears to
argue that if plaintiff seeks information regarding the
terminations of other employees, he "must show that he was
similarly situated in all material respects to the individuals
with whom he seeks to compare himself." Id. at 9. Plaintiff
responds that Edible's "discussion of 'pattern and practice,'
'disparate treatment,' and 'similarly-situated'-ness[]" is
inapposite because the "terms generally have no purchase outside
the law of discrimination," and plaintiff "is not alleging any
unlawful discrimination." Doc. #54 at 5.

Defendant's argument on this point fails. Defendant claims
that "[e]vidence concerning the treatment of employees with
different work responsibilities than the plaintiff ... would
have no probative value relevant to the plaintiff and therefore
[is] not discoverable." Doc. #49 at 9 (citation and quotation
marks omitted). But the cases defendant cites to support this
proposition deal with claims of employment discrimination, which
are governed by a specific legal framework. See id. That
framework – which indeed requires that a plaintiff seeking to
prove his disparate treatment introduce evidence that other,
similarly-situated employees were treated differently, see e.g.,
McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001) –
does not apply here, because plaintiff is not alleging that he

was the subject of discrimination. Rather, plaintiff alleges that Edible breached his contract by terminating him for cause, and denying him severance, when his actions did not rise to the level of "cause." As stated, information related to the terminations of other executives bears on the definition of "cause" and is thus relevant to plaintiff's breach of contract claim. See Bertrand, 2016 WL 2743489, at *2 ("While defendant is correct that comparative evidence is often sought in connection with a claim of disparate treatment, here, the evidence sought by plaintiff is relevant to interpreting plaintiff's contractual agreement with defendant.").

Defendant also contends that the information sought is not discoverable because plaintiff cannot prevail on his claim for breach of the implied covenant. See Doc. #49 at 6-8. Defendant states that plaintiff may not "challenge his dismissal as breach of the covenant of good faith and fair dealing" because "[t]he Complaint makes no claim or contention that the termination involved an impropriety 'derived from some important violation of public policy.'" Id. at 6-7 (quoting Magnan v. Anaconda Indus., Inc., 479 A.2d 781 (Conn. 1984)). Defendant also writes: "Having considered claims based upon breach of the implied covenant of good faith and fair dealing, courts have clarified that the duty requires only that neither party do anything that will injure the right of the other to receive the benefits of

the agreement[.]" Doc. #49 at 8 (citation and quotation marks omitted).

However, defendant's contention that plaintiff's implied covenant claim lacks merit is misplaced. Plaintiff has brought a claim for breach of the implied covenant of good faith and fair dealing. See Doc. #29 at 7. Defendant answered this claim, and did not seek dismissal. See Doc. #31 at 12. Therefore, plaintiff is entitled to discovery that is relevant to that claim, regardless of defendant's belief that it will ultimately be unsuccessful. See Fed. R. Civ. P. 26(b)(1); see also El-Massri v. New Haven Corr. Ctr., No. 3:18CV01249(CSH), 2019 WL 2006001, at *6 (D. Conn. May 7, 2019) ("In a federal action, parties are entitled to discover evidence 'relevant' to the pending claims and in proportion to the needs of the case."). Moreover, and as plaintiff points out, plaintiff "is not challenging his termination[,]" but rather Edible's "discretionary application of a contract term to impede his right to receive benefits that he reasonably expected – namely, his severance." Doc. #54 at 5 (citation and quotation marks omitted). Indeed, the Court understands plaintiff's Complaint to allege that defendant did "injure the right of" plaintiff "to receive the benefits of" his employment agreement, i.e., his severance compensation, by terminating him with, rather than without, cause. Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 67 A.3d 961, 987 (Conn. 2013).

Finally, defendant suggests that the information sought regarding Farid's alleged practice of terminating executives for cause in order to deny them severance is not discoverable because it would not be admissible as evidence at trial.[1] <u>See</u> Doc. #49 at 10-13. But the standards for relevance, at the discovery stage, and relevance, for purposes of admissibility, are different.

> Federal Rule of Evidence 401(a) and (b) defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence," and the "fact is of consequence in determining the action." Discovery, however, "is concerned with 'relevant information' — not 'relevant evidence' — and that as a result of the scope of relevance for discovery purposes is necessarily broader than trial relevance."

<u>Durant</u>, 2017 WL 4163661, at *3 (citations omitted). "Information within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). As

---

[1] Defendant also objects on the grounds that "[t]he breadth of the information sought of electronically stored information of unlimited executives across companies would be unreasonably burdensome and excessive and, there was no limitation of materials that may well contain 'privileged material, work product, impressions of counsel, etc.'" Doc. #49 at 2 (sic). As set forth below, the Court has limited the temporal scope of the requests, the number of roles included in the term "officer," and the substance of the RFPs. So limited, the Court does not find the discovery requests to be "unreasonably burdensome and excessive[.]" <u>Id.</u> To the extent that defendant objects to producing material in response to any specific request <u>on privilege grounds</u>, defendant must produce a privilege log, in accordance with the federal and local rules. <u>See</u> Fed. R. Civ. P. 26(b)(5); D. Conn. L. Civ. R. 26(e).

discussed, the Court finds the information sought is relevant to plaintiff's claims under the "obviously broad" construction of Rule 26. Daval Steel Prod., 951 F.2d at 1367. Thus, the Court is not persuaded by defendant's contention that the potential inadmissibility, at trial, of such information should preclude its production at this stage.

For these reasons, the Court finds that, generally, information regarding the terminations of other executives by Farid is relevant to plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

However, not all of the information sought in the disputed requests is relevant. Specifically, plaintiff's discovery requests seek information regarding not only employees who were terminated by Farid, but also employees who "resigned from ... employment under threat of termination[] ... or resigned with a 'good reason[.]'" Doc. #41-6 at 4. Plaintiff has failed to establish that such information is relevant. Indeed, while plaintiff repeatedly discusses Farid's alleged pattern of terminating executives, he does not contend, other than in a vague, conclusory manner, that Farid had a similar pattern of forcing or facilitating the resignations of executives. See Doc. #29 at 5-6; see also Doc. #41 at 2, 8, 11-12. Nor has plaintiff explained how any such pattern would be relevant to his

allegations, which arise from his termination. Thus, information regarding resignations has at best "marginal utility" to proving plaintiff's claims, and requests for such information exceed the scope of the relevant inquiry here. In re MTBE, 180 F. Supp. 3d at 280 n.43 (S.D.N.Y. 2016) (citation and quotation marks omitted).

Moreover, "even relevant information must be reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." Id. (citation and quotation marks omitted). Here, some of the disputed RFPs, as currently framed, are not proportional to the needs of the case. In particular, RFPs 19-24 request, inter alia, the entire employment contract for each terminated executive, as well as "all communications" between defendant and each executive concerning the termination, and "all settlement or separation agreements between the Executive and Edible Brands." Doc. #41-6 at 8-11. The Court finds that the breadth of material requested is disproportionate to plaintiff's claims. However, portions of the requested documents are discoverable. Specifically, plaintiff is entitled to discover the portions of the terminated executives' employment contracts that define "cause," and any communications or material addressing the reasons for an executive's termination, because these materials inform the interpretation of "cause" in plaintiff's employment agreement.

Accordingly, the Court will limit the RFPs to specifically target those materials, as set forth below. See S.C. Johnson & Son, Inc. v. Henkel Corp., No. 3:19CV00805(AVC)(SALM), 2020 WL 5640528, at *7 n.10 (D. Conn. Sept. 22, 2020) ("The Court may act on motion or its own initiative to restrict discovery on proportionality grounds." (citation and quotation marks omitted)).

Lastly, defendant contends that the RFPs are "unduly burdensome[,]" see, e.g., Doc. #41-6 at 5, but "has made no showing as to the nature and extent of the actual burden [it] would face in responding to the plaintiff['s] requests." Charter Pracs. Int'l, LLC v. Robb, No. 3:12CV01768(RNC)(DFM), 2014 WL 273855, at *3 (D. Conn. Jan. 23, 2014). "In the absence of any showing, the court cannot sustain the defendant's burdensomeness objection." Id. Nonetheless, the Court will limit the temporal scope of the requests to September 1, 2014, through September 1, 2019. This encompasses a five-year time period beginning three years before plaintiff's termination. The Court finds this time period to be reasonably limited, and does not expect it will cause unduly burdensome production for the defendant.

Accordingly, the Court will order defendant to provide responses to limited versions of Interrogatory 1 and RFPs 19-24, as detailed below.

Defendant shall provide a response to the current version of RFP 9, which concerns the termination of Amanda Allen. See Doc. #41-6 at 7. Given the apparent connections between the terminations of Allen and plaintiff, see Doc. #29 at 4-6, the Court finds the materials sought regarding her termination relevant and proportional to the needs of the case.

**B. Interrogatory 1**

Edible shall provide a response to the following, limited version of Interrogatory 1:

> Identify every employee of Edible Brands who, from September 1, 2014, through September 1, 2019:
>
> (1) was employed as an officer;[2] and
>
> (2) had an employment contract with one or more of said companies that provided for a separation or severance benefit (such as salary continuation or a lump sum payment) in the event of his or her termination without "cause"; and
>
> (3) was terminated, and as to whom Farid had direct involvement in the termination decision.
>
> For each person identified, provide:
> a. Full name.
> b. Last known home address and telephone number.
> c. Last known place of employment.
> d. Last held position of employment with Edible Brands.
> e. Date of hire by and date of separation from Edible Brands.

---

[2] The term "officer" is limited to the following roles: President, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, General Counsel, Chief Human Resources Officer, Chief Marketing Officer, Chief Information Officer, Vice President of Supply Chain, Vice President of Marketing, Vice President of Business Development, Vice President of Innovation, and Head of eCommerce. See Doc. #41 at 8 n.2.

f. Whether Edible Brands classified the termination as with "cause" or without "cause" under the employee's employment agreement, at any time, including if the classification changed.

g. Whether Edible Brands ultimately paid the employee any severance benefit and if so, (i) the percentage of the benefit contemplated by the employment agreement that was paid, and (ii) the date on which it was paid.

## C. **RFPs 19-23**

Edible shall provide a response to the following, limited version of RFPs 19-23:

As to [the executive identified in each RFP] provide:

(a) the portions of that executive's employment agreement relating to (1) termination and (2) separation or severance benefits, **if** the agreement contains a differentiation between terminations for cause and without cause, including any definitions of "cause"; and

(b) **if** the executive was terminated for cause, and the cause asserted related to negligence, gross negligence, or material misconduct in the performance or non-performance of her or his duties, any notice of termination, communication, or other material addressing the reasons for termination.

## D. **RFP 24**

Edible shall provide a response to the following, limited version of RFP 24:

For all individuals identified in response to Interrogatory 1 (other than those previously named in RFPs 19-23), provide:

(a) the portions of that executive's employment agreement relating to (1) termination and (2) separation or severance benefits, **if** the agreement contains a differentiation between terminations for cause and without cause, including any definitions of "cause"; and

(b) **if** the executive was terminated for cause, and the cause asserted related to negligence, gross negligence,

or material misconduct in the performance or non-performance of her or his duties, any notice of termination, communication, or other material addressing the reasons for termination.

**E. Protective Order**

As defendant notes, Connecticut law permits the disclosure of employee records "pursuant to a ... judicial order[]" in response to "the investigation or defense of personnel-related complaints against the employer[.]" Conn. Gen. Stat. §31-128f. Defendant requests that any "employee records or materials" produced in accordance with this Order be subject to privacy protections that go beyond those set forth in the Standing Protective Order. See Doc. #49 at 14; see also Doc. #7. Specifically, defendant asks that all information produced be (1) "limited to 'attorney's and client's eyes only', ... filed under seal if used in court submissions," and destroyed within thirty days of the completion of the case, and (2) "have the names, contact information or any other identifiers of the parties redacted[.]" Doc. #49 at 14.

The Court recognizes that personnel information produced in response to this Order may implicate the privacy concerns of former employees of defendant who are not parties to this case. Accordingly, the Court directs that such material shall be designated "Confidential – Attorney's and Client's Eyes Only." While the Court will not provide for the <u>automatic</u> sealing of

such material, if plaintiff seeks to file, on the docket, any personnel materials produced by defendant, he must initially file such material under seal, along with an appropriate motion to seal. The Court will evaluate, on a document-by-document basis, whether sealing is appropriate under the Local Rules and applicable precedent. <u>See</u> D. Conn. L. Civ. R. 5(e). Further, the Court finds that plaintiff is entitled to the names and contact information of the individuals identified in Interrogatory 1. Accordingly, defendant may not redact that information from the produced discovery.

## IV.  **Conclusion**

Plaintiff's Motion to Compel [Doc. #41] is **GRANTED, in part, and DENIED, in part.** Edible shall provide responses to the limited versions of Interrogatory 1 and RFPs 19, 20, 21, 22, 23, and 24 set forth herein, and to RFP 9, on or before **June 22, 2021.**

It is so ordered at New Haven, Connecticut, this 1st day of June, 2021.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE